Good morning, Your Honor. Holly Sullivan, Federal Defenders of San Diego, on behalf of Mr. Chavez-Rivera. May it please the Court if I could reserve two minutes for rebuttal. Yes, Your Honor. Thank you, Your Honor. Mr. Chavez-Rivera was stopped as a passenger in a Ford Aerostar van. That stop was based upon the Deputy Sheriff's belief that a singular object hanging from the rearview mirror was a violation, a traffic violation. You say singular? A singular object was the officer's belief at the time that the officer made the stop. That object did not violate the California Vehicle Code as the officer believed. That singular object did not lead to reasonable suspicion for the stop. Additionally, the District Court relied upon factors discovered by the officer after the time that the stop was made, not before the reasonable suspicion analysis should have begun. As a result of the illegal stop, with a lack of reasonable suspicion, all fruits of the illegal stop must be suppressed. Additionally, Your Honor, the District Court erred in admitting the certificate of nonexistence of record in violation of the Sixth Amendment in Crawford. The District Court also sentenced Mr. Chavez-Rivera above the two-year statutory maximum, relying on making findings of fact beyond just a fact of conviction. Lastly, Your Honor, the District Court erred in refusing to grant an adjustment, a downward adjustment, for acceptance of responsibility. I would like to first address the illegal stop. In this case, Deputy Watson began following the Ford Aerostar van. Based solely upon the officer having a concern that a singular object hanging from the rearview mirror violated a section of the California Vehicle Code, Section 26708A1, the officer proceeded to stop the van. The officer erred as a matter of law. The object... Because he said 01 instead of 02? Correct, Your Honor. Well, does that make any difference? I mean, he knew there was a violation of a California provision. He had the subsection number wrong. It does make a difference, Your Honor, because Deputy Watson only stated the code section he was relying upon, A1, and the title of the code section. Deputy Watson did not state any facts that supported why he believed there was a violation. He merely stated the code section and that he had a concern that code section was being violated. Deputy Watson never stated any articulable facts as to why that code section was being violated. The factors the District Court relied upon were factors that Deputy Watson observed after the stop of the vehicle. As a matter of law, Deputy Watson was wrong in relying on subsection A1. In People v. White, it was found in a very similar circumstance that an air freshener, which is what the object turned out to be, in fact, three air fresheners, hanging from a rearview mirror, were not a violation of subsection A1. They were not a violation because under subsection A1, the object must be affixed to the windshield, and air fresheners hanging from the rearview mirror were not affixed to the windshield. Counsel, in the motion to suppress, did the officer state which section, the language of the section he was relying upon? Did he say he was relying upon the subsection that talks about objects being affixed, or did he say he was relying upon the section that talks about objects obstructing the view? Deputy Watson, the subsection 26708A, whether it's A1 or A2, is titled Obstructing the Windshield and Impairing the Driver's View, although there are two subsections within that, subsection 1 and subsection 2. Deputy Watson merely stated that he had a concern there was a violation of subsection A1, and then quoted the title of that section, Obstructing the Windshield and Impairing the Driver's View. He did not state any facts beyond that, believing that there was some type of obstruction. Isn't it fair to give his testimony that he was concerned that there was an obstruction of the view, the driver's view, and he wasn't distinguishing between the section that talks about affixed objects and ones that are hanging? I agree with you that he didn't make any further statements excluding one section or another. He's out trying to enforce traffic laws, and he thinks, if we believe his testimony, that there's an obstruction of the driver's view. That's why he stops the van. He didn't specifically say that. He said he believed there was a concern of a violation of A1, and then quoted the title. Didn't he say he noticed an object swinging from the center mirror at the front of the van? Yes. Isn't that consistent with the statute not requiring something to be affixed? It would be if the officer was relying upon the correct subsection or the officer stopped the vehicle because of that subsection. In People v. White, a very similar circumstance happened, though. There was an air freshener that was hanging from the rearview mirror, and in that case the officer also relied upon subsection A1. Doesn't this clarify that he was relying upon the subsection that does not require the object being affixed? Doesn't that testimony clarify which one he was relying upon? I don't think it does clarify that because the officer did not make any findings of fact. The officer in no way articulated what he believed the obstruction was. He did not say or did not exclude that the object was not affixed to the windshield. Does it require that amount of precision for reasonable suspicion? Well, there can be a requirement that the officer relies upon an actual error in law, a traffic violation, and the officer did not do so in this case. Additionally, the officer has to give the actual facts articulable suspicion. They have to state why they believe there's a traffic violation and what they were relying upon in order to perform the stop, not factors that were determined after the stop. Your Honors, in this case, additionally, the District Court relied solely upon factors found after the stop had occurred. The District Court relied upon the fact that after stopping the vehicle, Deputy Watson was able to notice that there were three air fresheners hanging from the rearview mirror and not one singular object as he had believed prior to the stop. Additionally, the District Court relied upon the conduct of passengers within the vehicle after the time that the stop had occurred. Because there was no reasonable suspicion to stop that vehicle that Mr. Chavez-Rivera was a passenger in, all fruits of that illegal stop must be suppressed. The fruits of the illegal stop in this case were a second set of fingerprints, a fingerprint exemplar which was taken by the government months after Mr. Chavez' arrest as a fruit or a derivative of the illegal stop. Additionally, at the trial, both Deputy Watson and a Border Patrol agent, Agent Valdez, testified about factors regarding the stop and conduct that happened subsequent to the stop. All of those factors should have been suppressed as a fruit of the illegal stop. The second set of fingerprints is taken months after the stop occurs? Yes, Your Honor. How do you distinguish Ortiz-Hernandez? Your Honor, in Ortiz-Hernandez, Ortiz-Hernandez looked at both Garcia Beltran and also at Parga-Rosas. And in Parga-Rosas, there was no determination made, as was later made in Garcia Beltran, on the purpose of taking the first set of fingerprints, whether the first set of fingerprints were for investigatory purposes. Because that wasn't made in Parga-Rosas, Parga-Rosas doesn't apply in this case. In Garcia Beltran, the court went further and looked at the purpose of the fingerprints being taken and determined in Garcia Beltran that if the fingerprints were taken for an investigatory purpose rather than for purpose of identification, that the second set of fingerprints also must be suppressed if they were also taken for that same purpose. In this case, the district court did not make findings as to the purpose of the first set of fingerprints nor the second set of fingerprints. And in Garcia Beltran and then also in the dissent in Ortiz-Hernandez, Judge Fletcher analyzed, and I think it makes sense in this case also, that there's absolutely no remedy for a person if based upon an illegal stop, fingerprints would be suppressed, but the government could just then later take fingerprints again. I might even be inclined to agree with that, but sitting on a panel, Ortiz-Hernandez is the law in the circuit unless there's a non-bond decision that says otherwise. So how is this case distinguishable? Is it the lack of findings? There are a lack of findings in this case from the district court as to both sets of fingerprints, the first set of fingerprints and the second set of fingerprints. And this panel also is bound by Garcia Beltran, which found that if there was a finding of investigatory nature of the first set of fingerprints, the second set of fingerprints also would be suppressed. Unless it's for identification. Yes. And so in this case, the second set of fingerprints were introduced through the print examiner to compare to the warrant of deportation, right? To A-file documents. Right. And what purpose would that be for? The court did not make a finding as to what the purpose would be for, but at that point the government is attempting to show through the fingerprint examiner that Mr. Chavez-Rivera had been deported previously and that he had been a person who had been deported, that all the documents contained within the A-file are documents which pertain to Mr. Chavez-Rivera. You've more than used your time, but we'll give you two minutes for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Mark Rahe for the United States. Your Honor, the district court properly denied the motion to suppress in this case on two alternative reasons. And I would submit that the court's findings were sufficient for this court to affirm. First of all, as far as the basis of the stop, I believe Judge Rawlinson was touching on a point which is basically the theme of the government's position here. Reasonable suspicion does not require an officer to be absolutely certain that the violation that he's investigating is in fact a violation of the law. That's why it's called reasonable suspicion, and there are quotes that talk about what exactly the quantum of evidence is to meet that standard. It says it's not probable cause. It's not even a preponderance of the evidence. It just has to be something specific and articulable that can give an officer reason to believe a violation is occurring. But, Counselor, if he cites a statute and that is the basis for his reasonable suspicion, and it's wrong. I mean, the statute he cites does not support the suspected criminal activity. Where are we then? Well, I have two responses to that point, Your Honor. This case is not exactly such a case. The officer didn't just say as he was driving behind this vehicle, oh, I believe he's in violation of California vehicular code 26708A1 period. In fact, I have the relevant excerpts of page 188 of the excerpts of record. This is the one sentence response. Well, my concern was that it was in violation of 26708A1 of the California vehicle code obstructing the windshield and impairing the driver's view. And I think that's significant for a couple of reasons. We're not disputing that he cited the wrong provision here. But if you look at A1, there's nothing in A1 about obstructing or reducing the view. All A1 says is that no person shall drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied upon the windshield or side or rear windows, period. A2, which we submit is the proper basis for the officer's stop, states, no person shall drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied in or upon the vehicle, which obstructs or reduces the driver's view through the windshield or side windows. And I think that's significant because the obstruction and reduction language is only in subsection 2. It's not in subsection 1. So, therefore, even if the officer mistakenly cites subsection 1, we can't just look. He gave more of a complete answer than that. He goes on to say, and he says, my concern was that it was obstructing the windshield and impairing the driver's view. And not only that, this court has precedent that touches on this issue. And we cited these cases. I would specifically point to the Wallace case, the 213F3-1216. And that was the window tinting case. In that case, an officer was under the mistaken impression that California law prohibited any vehicle window tinting whatsoever. But the reason, and he also made an observation, though, that the windows that he saw in the vehicle in front of him appeared to be pretty dark. This court went on to hold that even though the officer had a wrong interpretation of the law, and, in fact, that's, I would submit, even more flagrantly wrong than in this case, the stop was still valid because the facts that he observed and that he testified to were sufficient under a proper reading of the law to support the stop. And I would also point out the Mariscal case, the 285F3 at page 1130, if I could read just two sentences from that, where this court held, that does not mean that the officer must have a precise appreciation of the niceties of the law. If the facts are sufficient to lead an officer to reasonably believe that there was a violation, that will suffice, even if the officer is not certain about exactly what it takes to constitute a violation. But just on more of a big picture, on the whole reason that we allow traffic stops on a reduced standard of evidence, it's not because the officer has to be absolutely certain. He just has to have a suspicion. And the purpose of the stop is then either to look for evidence that supports that suspicion or that dispels it. And I think in this case, the officer testified he was the only evidence that was presented to the district court that with his headlights, his headlights illuminated an object, and that it was swinging back and forth. And in his mind, that was enough to effectuate a stop. And even under the plain language of the statute under subsection 2, all those statutes ---- They stop cars in California for the ñ when they have the little statue of the Virgin Mary, too? That I don't know, Your Honor. Maybe in the right facts. I mean, in this case, the officer testified that not only from his headlights, but the headlights of oncoming cars. I know what the officer said. And that's what we have to accept. But I just wondered what the practice was, who they stop for having these objects, like the Virgin Mary or an air freshener in their car. They generally stop everybody who does that? Honestly, Your Honor, I don't know. I think that's outside the scope of the record. In this case, we only have the evidence before us. I can understand if the court is concerned if there was evidence of willy-nilly stops for this reason. It may be one thing. But in this case ñ No, I don't think they're willy-nilly. I think they know who they stop. But in this case, Your Honor, I don't believe that anything untoward happened. And this officer, the evidence further showed that as soon as he ñ It's not very easy to drive behind somebody and see that. I tried last night driving home behind cars to see what you could see. You know, we're not in a position to second-guess the district court who believed this officer's story. But I just wondered what the practice was in stopping people for this sort of thing.  And the other thing, Your Honor, in this case, this wasn't even a Border Patrol stop. This was the Imperial County Sheriff. Yeah. Well, that's understandable. But I would go on to state, Your Honor, in this case, I believe not only is the reasonable suspicion shown for the stop, but then we have to look at the other issue. And as we point out in our brief, even if this Court were to entertain the idea that this was an unlawful stop, is suppression the remedy? And as we point out, the precedents of this Court are clear. Well, the problem with the argument is that Ortiz-Hernandez is not yet final. So we don't yet know how long we will reasonably assume. True. But there is a petition for rehearing pending. That's correct, Your Honor. But I would also point out Ortiz-Hernandez simply relied on pargorosis. Pargorosis was from 2001. All, you know, possible pending petitions for rehearing or certiorari were exhausted in that case. That is binding precedent. As Judge Bogle pointed out, this panel isn't in a, I don't believe is in a position to question this law. Yes, there may be a petition still pending in Ortiz-Hernandez. But pargorosis also made clear that even if you look at two sets of fingerprints, the ones taken right at the time of what let's now assume is an illegal stop, and then ones taken months later, and they make a distinction between fingerprints taken for investigative purposes and ones strictly for identification. In pargorosis, the facts were substantially similar to the case here. The Court specifically stated that a second set of prints, it affirmed that they did not need to be suppressed. In this case, the second set of prints was taken five months after arrest, four months after indictment. For what purpose? Identification. What else could it be? Because indictment was already brought. And I know that the defense counsel may say. What do you mean identification? What did they want to make sure they had the right person? Yeah, it's just further piece of evidence. They suddenly got worried that they had the wrong person? They didn't want to do anything wrong? No, no, Your Honor. I mean, this is standard procedure. These are the way that these cases are done. Standard procedure? You mean when the fingerprint is suppressed, then you do it again? No, not in that sense, Your Honor. These precedents are relatively new. We don't have control of what Imperial County Sheriff does. We do have obvious control over what the Border Patrol does. But up until the time of trial, in this case, John Torres, he's done a lot of fingerprints for us in the past. There's no possible inference that this could be for investigative reasons. At this point, it's just another piece of evidence for the government to bear its burden of proving the elements of this case. So you're proving that this person who's sitting in the courtroom is the same person who was previously deported. Correct. Is that what you introduced it for? That is correct. And those are the supplemental excerpts of record. I don't quite understand the difference between an investigative purpose and for identification. You want to prove part of your case. You just said to Judge Rollins, and you want to say that this person is the right person. Isn't that investigative? Well, I think what the law makes the distinction before an indictment is brought. In fact, I was looking at a case, Guevara-Martinez. It's an Eighth Circuit case that the defense relies on. In that case, the facts were, I think, a good example. A defendant gives a false name at the time of arrest. When they run record checks, they can't find out that he was previously deported. So then they do fingerprint check. That fingerprint check then leads to his correct identity, which leads to evidence of deportation. A federal indictment is brought. Those are not the facts in this case. In this case, the government had enough evidence to meet the probable cause threshold with the grand jury. But you still want to be sure you don't convict an innocent person, of course. Well, of course. So that's what you're doing. You're investigating to make sure you've really got the right person. Perhaps we are arguing over words. But again, Your Honor, Parderos has decided this issue four years ago. That's simply we're following the laws that stand. I have a question that's sort of I'm burning to ask you, which has nothing to do with what we've been talking about. It has to do with the sentence. Okay. The judge enhanced the sentence substantially because of a finding that there had been the defendant had been deported. And then following his 1999 conviction for an aggravated felony. Where in the record was the evidence that the district judge could rely on in making that decision? I believe that we submitted basically the charging document and the abstract of judgment. And this normally is an issue that is brought up on appeal. That shows that the conviction, but where that he was deported. Abstract of judgment doesn't tell you he was deported. There's no question. He left the country. Yeah, he clearly had a prior conviction. That's not what I'm worried about. And Armand Doris Torres is still good law. But the question has to do with the subsequent deportation. There doesn't seem to be any place in the record where the district judge had that fact upon which he could properly rely in imposing a sentence well in excess of the two years that would otherwise be the maximum. Okay. I misunderstood the question initially. I think in this case, Your Honor, as we pointed out, I believe from page 42 of our brief onward, because this was a jury trial, we introduced evidence, warrants of deportation, order of the immigration judge. The testimony was repeated and consistent that that deportation happened on September 26, 2000. So it's in the record of the jury trial. Correct. It's not in the documents that are used at the time of sentencing to determine what the defendant's criminal history is. No, not otherwise except for the PSR. And, of course, our position is the defendant made legal objections to the PSR, but never factually objected to the fact that he was deported on September 26, 2000. Okay. Did you say at the trial there was evidence that on September 26th? Yes, Your Honor. And I know I detailed that evidence. Yeah. You say it's on your brief on page 42? Okay. Because I know Agent Cesar testified as the custodian. Yeah, it's page 42 to 43. Thank you. That was my question. Thank you. Counsel, just for the record, the statements that were taken from Mr. Chavez Rivera by the Imperial County Sheriff's Office, those statements were never admitted in trial. Correct. Okay. Counsel, do you agree that the evidence of the prior deportation was presented to the jury? Yes, I do agree that there was evidence of the deportation presented to the jury, the evidence being the order of the immigration judge. There's evidence that he was ordered deported. Was there evidence that he was deported, that he actually left the country? That was an issue that occurred at trial, was whether or not a ---- And was there testimony that he actually left the country at trial? No. There was testimony from a deportation officer. That he was ordered deportation? That he was ordered deported or that he was deported? Somewhat testimony on both. There was testimony from an AFILE custodian that he had been ordered deported or that there was an order of the immigration judge found within the file. Then there was testimony from the AFILE custodian also that there was a document, a warrant of removal, a warrant of deportation that had been signed. The AFILE custodian, Agent Cesar, didn't have any personal knowledge of any of the documents in the file. But there are documents that show he was actually deported? Documents that show removal, yes. Okay. And that was what the AFILE custodian testified to at trial. Your Honor? It says that executed warrant of removal reflects that he was removed to Mexico. That was the testimony at trial? That's the Agent Cesar's testimony, yes. Your Honor, in this case, I do want to make sure that one thing is clear for the record. Deputy Watson's testimony was not that he was concerned there was a violation of the vehicle code and he was concerned that there was an obstruction. His exact quote was, my concern was that it was in violation of 26708A1 of the California Vehicle Code, obstructing the windshield and impairing the driver's view. Those words, obstructing the windshield and impairing the driver's view, is merely the title of the code. It wasn't further facts that were given that Deputy Watson was saying, I believe that there was an obstruction.  Is that the title of the code? Is that the title of the full, both subsections? It is, Your Honor, of both subsection 1 and subsection 2. And I would note, I disagree with government counsel in speaking about the facts in the record. Other than him stating the code and that he had observed a singular object swinging from the rearview mirror, there were no other facts in the record that Deputy Watson relied upon in making the stop. In Lopez Soto, this Court found that there was no good faith exception, that an officer's mistaken view of the law, even if the officer was making, had that belief in good faith, that that doesn't excuse or make a reasonable suspicion finding. And Wallace is differentiated from this case and from Lopez Soto. And the reason in Wallace is that there was an actual violation, even though the officer believed that no tinting, no window tinting was appropriate, instead of the amount of window tinting. The actual tinting was in violation because of the amount of window tinting. That's not the circumstance here. The circumstance here is that there was no violation. There was a mistake as a matter of law. Suppose he had given the right code section. Would there be reasonable suspicion? In this case, Your Honor, I still think there would be a lack of facts in support in the record of that. The officer did not articulate at all the reason other than citing the code section and noting that there was a swinging singular object. I don't believe there would be enough facts in this case to be able to have articulable, reasonable suspicion. Thank you, Carol. Your Honor, I would also, Your Honors, I would also lastly note that in this case, we do believe that a full remand would be appropriate. And the reason for that is that the error, the constitutional error and Sixth Amendment error was preserved within the record. Thank you, Carol. Thank you. The case is argued to be submitted.
judges: Reinhardt, Rawlinson, Fogel